Your Honor, I'm Arnold Phillips, representing the Ellen plaintiff, in this case Mr. Deaton, and I would like to ask that I split my time by 10 and 10. You'll have to help us keep track of your time. The total time is on the clock. I can do that because it was right. Your Honor, we've raised two issues in our appeal. One is that the judgment as a matter of law is incorrect, and basically when the court made the judgment with regard to the sexual limitations, the trial court looked to the date of the first incident in the chain of events that led to the Fair Credit Reporting Act violation, and that was the original mistake made by the Chevy Chase Bank in 1984. However, and the court in their judgment, in their order on the judgment as a matter of law, indicated that it was when the credit error was discovered, when the billing error occurred, and when the credit reference mistake was made. And of course, those were times which dealt with the billing, but they weren't times that dealt with the cause of action arising under the Fair Credit Reporting Act. What is the event that triggers liability under Section 1681S2? That would be when the report notification is made that the consumer feels there is an error and files a dispute, and then arises the duty under 2B1 to investigate. And that's what happened in August of 1998. So up until that time, all that other factual material might be relevant to some other cause of action, but it wasn't relevant to the Fair Credit Reporting cause of action. And of course, what the court did, the court went off on those occurrences. So it is also in the case, there was really no dispute ever made by the defendants with regard to when the 1681S2B1 Fair Credit Reporting Act cause of action arose. They indicate that these things happened starting with the August 1998 report to the Credit Bureau of the Pacific and the other chain, other events in that chain leading up to the filing of the lawsuit in May of 2001. So also on that same issue, if we look at our second grounds for the reason that the Judgment of Matter Law was incorrect, and that is that it was against the greater weight of the evidence, and we look at the entire evidence in the record on the question of when the notice arose and the period of limitations began to run under the Fair Credit Reporting Act, we find that there's no dispute from the defendants about when that happened. They only rely for their arguments on things that might be relevant to a Fair Billing Practices Act cause of action. So what, in your view, is the relationship, if any, between the Fair Credit Billing Act and the Fair Credit Reporting Act? And sort of a related question, what obligations, if any, does someone have under the Billing Practices Act to correct any misimpressions that would otherwise be carried forward in the credit reports? Well, I don't think, other than they're in a very general sense, Your Honor, they're both laws being part of the group of consumer protection laws. I don't see any direct relation. There's certainly no connection between any control that one statute of limitations in one law would have over the control of the statute of limitations in another law, which is part of the defendant's position. But in this specific case, all of this arises out of a single debtor-creditor relationship. Is that not right? That's correct. Then tell me what the plaintiffs, or the lenders, let's put them as a group, the court reporters and the lenders, what did they get for their settlement? Another lawsuit? Which settlement, Your Honor? Wasn't there a settlement? A $5,000 payment to the plaintiff? Oh, Your Honor, that was a settlement that was made against their agent who was collecting a debt under the Fair Debt Collection Practices Act, and that's for violations under the Fair Debt Collection Practices. In this case, actually, Your Honor, there were a series of different causes of action that arose from the consumer. But it all arises out of one transaction, does it not? That's correct, Your Honor. And wasn't the law firm an assignee of the creditor? An assignee, an agent. And they stood in the shoes of the creditor? That's correct, Your Honor. And the settlement was for the benefit of the creditor? Your Honor, exactly. But, if I could, Your Honor, it was for the benefit of the creditor for their exposure on the Fair Debt Collection Practices Act. So the settlement was solely limited to one cause of action, and so you had a partial settlement. You didn't settle the whole thing at one time. Absolutely. So we're back now asking for some more money, right? We're now asking for the damages that occurred out of their failure to correct her credit report. Did the settlement pay for any of the damages sustained by the plaintiff? $5,000 on a what? What was the original charge on this? About $1,000 by the boyfriend? The original charge, Your Honor, it was in that range. Maybe it was $400 or something. Yeah, less than $1,000. And the owner of the credit card gave it to the boyfriend to make the charges, and now she's got $5,000 in settlement, and now she wants some more money from other people. Well, that's because, Your Honor, the money that she received, the $5,000, didn't go. They still didn't correct her credit report. Didn't they put written off? They put written off, Your Honor. An accounting term that means that on the balance sheet of the lender or of the bank that they're not seeking collection of that account in any further active manner, right? And it's a negative. It tells anybody that orders the credit report and reads that that there's been an accounting adjustment, and that's all. Well, no, sir, I would disagree with you. I think in the industry, a write-off is not a plus for the creditor's account. It shows that that debt was uncollectible and had to be written off. Well, it certainly tells all the shareholders of the bank that the bank doesn't have an asset or a claim against the plaintiff anymore. That's what a write-off is. It's an accounting matter. Well, that may be true, Your Honor, from the shareholder of the bank's perspective. Doesn't that mean the same to Equifax and the other credit reporting agencies? Are those guys dummies? Well, no, Your Honor, I don't think they are. But the question is, what does it mean to other creditors, other prospective creditors, when they see that they know that this was a debt? Did you show that any other creditor relied on that credit report? We did, Your Honor. We showed that there were four, I think five, different times in which she had credit denied as a result of these errors in the credit report. Now, those are general, sort of categorical, but there's only one charge off there. I should take that back. There's another charge off for $20 or something. But these were, Your Honor, she made a, applied for credit. The credit was denied. She asked for the reasons. The credit reporting agencies sent her the reasons, and one of them was excessive charge offs. Yeah. So we do think that that's a negative, I think. Does she dispute the fact that it was charged off? No, she disputes the fact that the charge off was correct because it wasn't, it shouldn't have been a charge off. Isn't that, in fact, what happened? Isn't that honest? Well, it definitely was charged off. It wasn't a correct action on the part of the bank. No, it was incorrect. It shouldn't have been charged off because it wasn't a valid debt to begin with. But wasn't that a decision the bank made, not the debtor? No, fine. That is a decision the bank made, and we're saying that. And that's what's reported, that the bank made a decision to write off the debt. That's correct. And that's an honest statement of fact. It is an honest statement of fact. In their opinion, they did write it off. In their opinion. Is there a different fact? Yes, Your Honor. It was not a valid debt. You can't write off an invalid debt. You can write off anything you want. It's called a gift. You can call it a write-off, but in fact, when we take ourselves out of the position of the bank and we look at it from the position of the general creditor community wanting money for this lady, it becomes not a positive. It becomes a negative, that there was a write-off. In other words, there was an uncollectible debt that had to be written off, and it's not a positive on your credit. And that was her whole complaint. Now, on the timeline, when did she first become aware of the write-off? Date. Oh, Your Honor, I think it would be in the 1998 timeline. What date? Your Honor, I'm not certain. There's no proof in the record of that? No, there is a proof. I would say it would be the first time that she received the – she was denied credit when she applied to finance the purchase of the apartment. That would have been the summer of 98. So it would have been in the summer of 98. And that's when she filed the dispute. Well, I don't find any date in the briefing for it. I can find that for you, Judge. I don't have it. Okay. If you do it, don't rebuttal it. So the charged-off statement by the defendants was first made in 1998. Is that right? Yes, Your Honor. So she couldn't have found out about it before 1998 because it hadn't happened yet. That's correct. In fact, in April 1998, she had a telephone conversation with the bank, still trying to get this straightened out, and the bank sent her a letter that said, thank you very much for your information. We are going to further investigate this to see whether or not we've made an error. And then she made the application for the loan for the real estate, was turned down, and then she filed the – got her report and then filed the dispute. The other issue is the state claim, the 480, unfair business practices claim. Again, that is the statute of limitations argument that comes from that background. In that case, again, we feel that the proper beginning point for the calculation of the statute of limitations should have been the date of the filing of the lawsuit, which is May of 2001. Rather, in that case, the court also took the date of the first charge, which would have been 84, and then counted forward. If this goes back to the trial court, is the plaintiff in a position of recovering damages under both causes of action, the state claim and the federal claim? Our position is that she is, Your Honor. You don't have to make any election remedies. She's got a double recovery. Yes, Your Honor, we would have to make – possibly could make election remedies. However, if the state statute provided a broader remedy, then we would have that option. Then you'd elect a broader remedy and let the other one go, right? What's your position on federal preemption? Yeah. Conflict preemption. Is there conflict preemption as between the Hawaii state statute and the federal sections that we're discussing here? Right. We don't feel that there was any preemption, and I know that this issue was likely brought up by the defendant in their argument, and in that they take a position that the preemption is triggered by the temporal analysis, which would be that when they first are notified, anything after that notification would be preempted, and in this case, they don't admit any notice until 2002. So all of the acts before 2001, excuse me, in January, all of the acts before that under their argument, under their position, didn't be, certainly not preempted. I don't think that that temporal analysis for preemption is a good one. I know that some district courts around the country have taken some other positions on that. I think there are three general ones. What I would like to do, though, if the court is interested in that, since they didn't really, the defendants didn't respond to that issue, we would like an opportunity, if the court is interested, to file an issue. Well, at the time it went to the jury, there were additional interrogatories, and, of course, those weren't answered, and we don't know what a jury would do with this, right? That's correct, Your Honor. And if it has to go back, it will be a matter of new instructions, right? Yes, Your Honor. Okay. I'm not certain that the instructions, we don't think there's anything wrong with the instructions, Your Honor. We don't think that the instruction given with regard to sexual intimidation is a proper matter to put before the jury. But we don't find any error with the wording of that particular instruction. Well, your assertion now is, if I were to write an opinion on this tomorrow, I would say that your client is entitled to a double recovery for the same activity, right? No, Your Honor. I wouldn't. I'd say you had to make an election before it went to the jury? Yes, Your Honor. I think an election would be proper. Before it went to the jury? Yes, Your Honor. Okay. I'm not certain whether I would have elected at this point. See, there's a broader remedy also, a better remedy under the state statute. So if we were going to, if we had our 40 claims still active in the case and we had our fair credit or 40 claim active in the case, then there would be some very good arguments where we would select the 480 claims. So if you lost your first claim on the statute of limitations, you prevailed on the statute of limitations with respect to your second claim, and then we got the state claim, and you were required to go back to the trial court on a pretrial motion and make an election, and you elected the state claim, then the district court could send the whole thing back to state court, right? There would be, yes, Your Honor. Okay. Have, I should probably know this from the docket sheet, but I don't. Have the parties made any effort to mediate this case through the court's mediation program? The circuit court's mediation program? Yes. Yes, we did, Your Honor. Okay. I think I have five minutes left. I think I'll reserve that. You may do so. Thank you very much. We'll hear from her counsel. Good morning, Your Honors, Judges Beeser, Graber, and Bybee. My name is Mary Martin. May it please the court, I represent the defendants Bank One and Chevy Chase Bank. The two banks worked, Chevy Chase was the original lender and then transferred all of its assets to Bank One. They came together and defended together on this case. Ms. Deaton's case is premised on a belief that if there was a valid inquiry, probably made under the FCRA, the Fair Credit Reporting Act in 1999 or 2002, then it was the duty of the bank to try and investigate a purported error that occurred on her credit card statement in 1993. The actual statement came out in January of 1994. The bank's position is that the obligations under the Fair Credit Reporting Act do require a reasonable inquiry into the status of the case, and if it is shown that the reporting is correct, then they simply confirm the information. In your view, what triggers liability under 1681S2? What is the type of hack that triggers that liability? The actual trigger to that liability under S2B, which of course is the one that actually goes to the furnisher of information, which is what my clients are, not the credit reporting agencies, is when the offended party, Ms. Deaton in this case, contacts a credit reporting agency, normally TransUnion, Experian, or Equifax, one of the three national credit reporting agencies, and tells them there's a problem on my report, I want you to get it fixed. But it's still not triggered. The credit reporting agency then must go to the furnisher of information. That's what triggers any obligation for the furnisher of information, and it's only if they don't follow through on that act triggered by the credit reporting agency, not from the debtor, but from the credit reporting agency. Now, in February 2002, there was a verification of plaintiff's account at the request of Equifax and TransUnion, is that correct? That's correct, Your Honor. What is that? Is that the furnishing of information? Yes, it is, and it was a follow through, which simply said, yes, that the account at that point in time showed as having been charged off, which is exactly what it said, and it had been said for several years. Well, do you agree or disagree with opposing counsel's assertion that it is incorrect to show something as charged off if something was wrong from the get-go? In other words, if a debt is never owed, it should not be shown as charged off. As a theoretical matter, do you agree or disagree? I'm going to ask to be able to qualify that, but theoretically, no, it probably shouldn't be. But the facts of this case preclude applying that theory strictly, because the facts of this case show that when Ms. Deaton should have or could have corrected that error if indeed it had not been corrected, and she didn't prove that it hadn't been corrected, her remedy was under the Fair Credit Billing Act under 15 U.S.C. I guess I have difficulty seeing how the two statutes are necessarily connected in the way that you want them to be connected when the text of the statute is the kind of defense that you are raising. The text of the Fair Credit Reporting Act, where does it say that the consumer has to have corrected the record previously in order to take advantage? It doesn't say that the creditor must have, or that the debtor must have corrected. I'm sorry, I'm mixing my words. It doesn't say that the record must have been corrected by the debtor way back then, but it says that the creditor must make a reasonable inquiry. That's the way the case law is applied. There's many cases that talk about what the furnisher of information's obligation is under the Fair Credit Reporting Act, and what it is to do is to conduct a reasonable inquiry. Now when that's... And would a reasonable inquiry here have shown that Ms. Deaton gave written notice immediately that those original charges were wrong? Well, let's talk about the two different times that she claims to have made an inquiry. She claimed to have made an inquiry through a local credit reporting agency in 1999. No, in 1994, she sent the original written notice stating that the charges were wrong, and she sent a certified letter to the same effect. I understand that, but at that point in time when she sent that letter, she was attempting to trigger her rights under the Fair Credit Billing Act, not the Fair Credit Reporting Act. If the bank did not follow through, she blew her statute of limitations under 166610 Truth in Lending, 1640E, which gives her one year. Here's my difficulty with that. The obligation to furnish correct information is independent of the statute of limitations on the original billing practices claim. If she notified in writing that that was a wrong charge, the fact that she didn't choose to file suit on it, I don't see how that helps your client if the question is whether they knew or should have known that the charge was wrong. You seem to be saying that unless somebody is willing to sue over the wrong charge, it doesn't count as a wrong charge. That's right. That's exactly right, Your Honor. Where in the Fair Credit Reporting Act does it say that? It comes from analysis of cases under the Fair Credit Billing Act. I want to know where the statutory text is that allows you to make the argument that you're making, the act under which you've been sued. You have to look at the global federal laws as to banks and to how far back their records must go, how far back they have to keep their records. Because if you don't make an allegation until at least five years or seven or eight years after the fact of something having been posted erroneously on your account that you never corrected, and if it ballooned into a credit reporting incident that was not in your favor, if the bank only has an obligation under the federal law to go back, I believe it was testified by our clients that it's actually three years, they manage to come back with seven years of statements. But at seven years, at exactly 84 months, every month they purge the 85th month. Every year it is purged. And they weren't even sued in this case until May of 2001, notified, served with the case in August of 2001. So that's when they froze their credit, the account statements for Ms. Deaton back that exact seven years. It was shy of when, and that's only by their own standards. They're not required to keep it back that far. And that's why you can't just look at the Fair Credit Reporting Act by itself and say, well, if they didn't correct it, then it's too bad. It's under federal law. The banks only have to keep their records so far back. Otherwise, we would be in myriads and myriads of paperwork. And although we try and go on to computer to avoid the paperwork, you know, I guess what's troubling about this to me is that it essentially says if you didn't sue under one statute, you're forever barred from getting corrected information into your credit reports. And that people have impunity to say whatever they want about those old debts, whether it's true or not. Your Honor, I think the answer to that quandary is that when somebody does bring the claim many years afterwards, it's their obligation to prove that the, yes, it's admitted that there was a triple billing on a statement of an entry in December of 1993. And that's wrong, right? You don't get charged three times for one thing. Correct. But if you want to wait until 2001 to say it was never corrected and sue on that basis, you have to prove that it wasn't corrected. And the only statements that Ms. Deaton could provide were the initial statements from December, January, and I believe February of 1994. And then there's a gap. She didn't have, her letter to the bank didn't even go until March of 1994. The bank didn't have records any earlier than August of 1994. She didn't prove that on those statements it was not corrected. Where does the charged off come from then? Our client showed mathematically, starting with the first statement that was available and even taking off the entire prior balance, proved that mathematically, starting with the charges at that time, that because her boyfriend, her friend, whatever, was not paying on a regular basis, the charges mathematically could and did accrue all the way up to the amount that was not paid. And then he just abruptly stopped paying on the account, and after so many months, the bank charged it off. Mathematically, it works. We were surprised, but it does. And it's in the record. Exhibit number 224, I believe, demonstrates that mathematically, even if, and this is assuming that everything that had been standing there shouldn't have been carried forward, but we started with a zero balance. And that's probably not even a correct assumption, because that would be assuming that the card hadn't even been used for the two or three months prior to that statement date. And given the history of all the statements, as we see from exhibit 209, it was being used on a regular basis, all the way through. I don't believe there's any months without any charges on it. Mr. Herrera used it consistently, all the way until he just decided to stop paying on it. I would like to clarify a particular piece that has been discussed here. On this issue of whether the HRS 480, the Hawaii Unfair Trade Practices Act, could or should apply, and what analysis is applicable when we're talking about preemption of the federal statutes under 1681 TB1F. I may have this mixed up. There is preemption over state law claims, and there have been three purported analyses as to how that applies to state statutory claims, which the HRS 480 claim clearly is. There's the analysis that just says the 1681T just totally throws out 1681H. Then there's the temporal analysis that Mr. Phillips discussed, and there is also the statutory construction analysis Mr. Phillips' reply brief, which is the first time that this issue was raised, actually supports the temporal analysis, which says that 1681T, the preemption statute, only kicks in at the time that the furnisher of information has given notice that there is an inquiry under 1681S2B. That's the temporal analysis. The statutory construction analysis says that 1681H sub E applies to negligence and the specific tort claims that lie therein, and that the 1681T applies to all state law claims. There is an exemption from that section, but it doesn't apply here because it talks about state laws that were enacted after 2004. We would argue that the statutory analysis, statutory construction applies, and it is actually supported by a case here in Hawaii entitled Cisneros versus TransUnion. It's 293F sub 2nd, 1167. That's a district court citation? Excuse me, Your Honor. That's a district court case, right? That's correct, Your Honor. It's not a Supreme Court of Hawaii case. No, it is not. It is a federal district court case, and it is cited in the McLeod versus Homicide Lending case, which I believe is mentioned in the reply brief that talks about these three different constructions, but it clearly supports the position that in all of the reasons that there shouldn't be any 480 claim here, any statutory Hawaii claim here, that the statutory construction analysis has been applied here, and therefore the 1681T claims preempt any 480 claims on a fair credit reporting act claim. Let me see if I can get this very clearly on the record with you. Is it your position that because of preemption, no citizen in Hawaii can bring a cause of action under this act, under the state act, for any recovery arising out of a transaction involving a national bank or a credit reporting agency? Well, with the exemption of that one piece, yes. So the statute really is virtually totally ineffective? No. How would it apply to a Hawaiian citizen? I'm sorry, Your Honor. I shouldn't speak so quickly. It doesn't preempt any kind of claim against a national bank. It preempts any claim that has to do with credit reporting, which is controlled under the Fair Credit Reporting Act. Would there be some local credit agencies that might not be covered by the federal law, or are they all covered? I believe it applies to all credit reporting agencies. But at this point, I think every credit reporting agency in existence is within the household of one of those three national credit agencies. Let me take the other side of the coin for a minute. I was talking to counsel about election of remedies as opposed to a preemption. It was his position he would have to elect the remedy at the time before it went to the jury, or it could be preempted. He would make an election of remedies prior to that case actually going to trial if it were to remand. You're saying we should deal with this claim as a matter of law and say it's federally preempted so that there are no benefits available in this case under the federal statute. I mean, under the state statute. As far as the... Credit reporting is concerned. Yes. Okay. That's correct, Your Honor. I have two other questions for you, and I'll try to get to. One of them is you were making the argument that you've demonstrated in Exhibit 224 and elsewhere that there has been no inaccuracy. That mathematically it is possible. Conceptually, how can we possibly reach that issue on the procedural posture of the case that's before us? How do we get to that issue? I know you've argued it, but I'm not sure how it comes into the picture. It comes into play if this Court agrees with me that under the Fair Credit Billing Act, Ms. Deaton had the obligation to make the correction if there was a correction to be made by having filed her lawsuit within one year of the bank's failure to correct that record. We're here on a trial, not a summary judgment. That's correct. And the only question raised on the appeal is statute of limitations. That's why I was wondering why you were arguing the merits of the claim that you could argue to the jury. Because we actually disagreed with the first question on the protocol. Did you cross the field? Your Honor? You didn't cross the field? No, Your Honor, we did not. So it's waived for this proceeding. I don't say it's waived if you have to go back to trial. Insofar as this Court has the opportunity, Your Honor, I truly believe that probably this Court should enter an opinion that deals with this issue of whether the Fair Credit Billing Act and Ms. Deaton's failure to correct any if there was something to be corrected precluded later making a claim that it was never corrected and therefore it should never have shown up on a credit report. I truly believe that that's the analysis that this Court should come out with. You're somewhat in a position of winning your case in the trial court by asserting an affirmative defense which you proved and the district court bought and the jury bought and you're out of there. But all this other stuff has never really come to a final decision in the district court. We tried to and we argued it. What is the way the statute of limitations to start arguing about the other stuff and get it on the merits instead of an affirmative defense? Your Honor, the first question on the verdict form was the statute of limitations question. And you won. Well, yes. But interestingly, if the Court had worded it the way that we asked, the answer probably would have been no and they would have gone or would have been yes and they would have gone to the second question because we asked for that question to be stated, did the plaintiff raise her claim within the statute of limitations of the Fair Credit Reporting Act? And on Ms. Deaton's counsel's own decision, the Court refused to include under the Fair Credit Reporting Act as part of that question. My final question to you is what relevance, if any, do you see in the settlement agreement? And I know you're red-lined us on, but I'd appreciate your answering that. In the Paternal Settlement Agreement? Yes. The relevance is that under that agreement, and it is included in the record, on our record starting at page 302, and it talks about the parties hereby desire to completely and fully terminate, settle, and compromise all claims against each other, including but not limited to all claims in the lawsuit. Okay, but who are the parties? How does that help you? The actual parties, what was interesting, Cottenow and Felix tried to collect, stopped trying to collect, and Ms. Deaton nonetheless sued them. The named parties don't include the banks, but it's clear from the statement in here that Cottenow was retained by Chevy Chase Bank to collect alleged debt from Deaton. They asked for any other claim? Yes. And they stand in the shoes of the bank? Yes, Your Honor. As to defenses? Yes, Your Honor. But you didn't cross-appeal on that issue either? I'm not sure what we would have cross-appealed on that particular issue. Okay. Thank you, Counsel. I think Mr. Phillips has some rebuttal time left. Yes, Your Honor. Yes, Your Honor, just a couple of points if I could. With regard to this 480 question, if we're going to get into the argument, we have, the defendant has gotten into the argument about the sections F and T. We didn't brief that, and I requested the court to allow us time to do that. Under our analysis, the issue was raised by them, and they settled on the presumption being the temporal analysis. And the temporal analysis means that everything is preempted after the notification is made. In their case, the only notification they admit is the January of 2002 notification, so all of the acts that we're talking about that would give rise to Ms. Deaton's cause of action wouldn't be preempted because they're before the date of notification. The other thing is, with regard to Ms. Deaton's obligation to prove under whatever Fair Credit Billing Act, if that isn't any good, then when she brings a claim under the Fair Credit Reporting Act after the Fair Billing Act statute limits have ended, she has an obligation to prove. Well, I believe the record is clear that the first time she made the objection, it was a 54-page fax in which she sent all the information, the notarized statement from the people at the hotel, from their accounting department, that it wasn't a good charge. And so I think that certainly at that point, unless it's rebutted, which they haven't been able to rebut, that it should have been deemed to have been proven. The other thing is, with regard to this error, I just want to point out that... Are you saying the jury should have been instructed as a matter of fact by the fact they couldn't find the fact? No, Your Honor. Okay. I'm sorry, I didn't... Well, deemed proven sounds to me like a directed verdict. Deemed proven is the wrong choice of words, Judge. Okay. Excuse me. The only other thing was the records. The interesting thing about the records is that the records, the lawsuit was filed in May, the critical records are right in that period of time, and the bank picks up the filing of the lawsuit by their Delaware office, writing us and saying, we see that you filed a lawsuit against it, please send us the papers under Rule 4 so that we can serve it without you having to undergo the expensive proper service process. And we do that in August, and then we get to trial, the seven-year period of time their claim starts in August, so they've destroyed all the records, conveniently enough, for that 120-day period, which would have shown, if in fact there was any error. That's all I have, Your Honor. This is a question for the panel. I don't think we have any further questions. Thank you. The case just argued is submitted, and we appreciate the arguments of both parties.
judges: Beezer, Graber, Bybee